Receipt number AUSFCC-8357580

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| 1. | Michael R. Acuna | |
| 2. | Jesus E. Aguirre | |
| 3. | Miguel Alcala | |
| 4. | Cesar Almanzar | |
| 5. | Joey Amesquita | |
| 6. | Jessica L. Arellano | |
| 7. | Tomas Avila | Case No.  22-1758 C |
| 8. | Michelle Baca | Judge _____ |
| 9. | Chrystal M. Barragan | |
| 10. | David H. Barraza | |
| 11. | Ruben S. Barrera | |
| 12. | Alberto Barrio | |
| 13. | Christopher Bejarano | |
| 14. | Matthew L. Benson | |
| 15. | Luis Calvillo | |
| 16. | Raymond B. Canto | |
| 17. | Victor A. Carmona | |
| 18. | Alisha R. Carter | |
| 19. | Raymundo Ceballos | |
| 20. | Anivar T. Chacon | |
| 21. | Thomas Chacon | |
| 22. | Ozmann A. Chaidez | |

23.   Jorge Chavez

24.   Kristina M. Conner

25.   Vanessa M. Cordova

26.   Celia Cortez

27.   Julio Cruz Jr.

28.   Chris E. Czerwinsky

29.   Mark A. De Carlo

30.   Sandra A. De La Torre

31.   Lauren M. Deckelbaum

32.   Jaime J. Del Castillo Jr

33.   Felix Delariva

34.   Fernando Diego

35.   Wendy A. Elston

36.   Jorge A. Esquivel

37.   Michael A. Evangelista

38.   Joshua M. Ewell

39.   Mark J. Fallert

40.   Angel Faulkner

41.   Eric Garay

42.   Marcos Garcia

43.   Steven J. Gonzalez

44.   Francisco J. Gracia

45.   Terry R. Green

46.    Darrell R. Guenther

47.    Jose R. Guerreo

48.    Angel Gutierrez

49.    James M. Hathorn

50.    Diana C. Hernandez

51.    Elias Hernandez

52.    Maryne Hernandez

53.    Rogelio Herrera Jr.

54.    Victor A. Herrera

55.    Michael A. Hughes

56.    Alberto Jacquez

57.    Jacob L. Jauregui

58.    Marco A. Jimenez-Ramirez

59.    Christopher D. King

60.    Marelene Lara

61.    Lonnie R. Lewis

62.    Adrian O. Lopez

63.    Joshua A. Lopez

64.    Arturo Mares Jr.

65.    Jaime Marquezerives

66.    Rene A. Melendez

67.    Carlos Mendoza

68.    Gilbert Mendoza

69. Raul Mendoza

70. Alberty Molinar III

71. Sean J. Montalvo

72. Michelle C. Monteleone

73. Ana S. Mora

74. Elizabeth Moreno

75. Carmen M. Munoz

76. Norman E. Murphy

77. Juan Nunez

78. Emanuel O'Neill

79. Alex Ortiz

80. Jeanette Ortiz

81. Rick Ortiz

82. Rosa M. Oster

83. Sammy D.A. Perez

84. Sandra M. Quinonez

85. Daisy R. Ramirez

86. Leobardo Ramirez

87. Nicolas P. Redfearn

88. Reymundo R. Resendez

89. Eduardo Reynoso

90. Edgar G. Rivas

91. Nery A. Rivas

92.  Armando Rivera

93.  Tommy Rivera

94.  Victor Rivera

95.  Lewis X. Rivera-Jones

96.  Daniel Rodotte

97.  Adrian Rodriguez

98.  Carlos Rodriguez

99.  Lizette I. Roldan

100.  Christian Rosales

101.  Erika A. Rosales

102.  Matthew K. Rosales

103.  Angelica Rubio

104.  John E. Rubio

105.  Rey J. Saenz

106.  Nicholas A. Sanchez

107.  Panfilo M. Sanchez

108.  Alberto Sanez

109.  Richard Saucedo

110.  Daniel Silva

111.  Austin T. Smedley

112.  Curtis R. Smith

113.  Sharon L. Sorenson

114.  Daisy D. Taylor

115.  Omar A. Terrones

116.  Alfredo Torres Jr.

117.  Mario Ulloa

118.  Francisco J. Vargas

119.  Ivan E. Vega

Plaintiffs

v

UNITED STATES

Defendants

## **COMPLAINT**

1.      Plaintiffs are current and former employees employed by the defendant United States Government ("defendant" or "Government") at the U.S. Department of Justice, Bureau of Prisons, at Federal Correctional Institution ("FCI") La Tuna, located in Anthony, Texas, FCI La Tuna consists of Federal Correctional Institution La Tuna, Federal Satellite Low La Tuna, and the Camp. (Collectively hereinafter referred to as "FCI La Tuna" or the "Institution"). Plaintiffs bring this action for damages and other relief, pursuant to 29 U.S.C. § 216(b); 28 U.S.C. §§ 1346(a)(2), 1491; 5 U.S.C. §§ 5545(d), 5343(c)(4), 5596 (the Back Pay Act), and the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207, to remedy the defendant's willful and unlawful violations of law complained of herein.

## **JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(2), 28 U.S.C. § 1491, 29 U.S.C. § 216(b), 5 U.S.C. § 5545(d), 5 U.S.C. § 5343(c)(4), 5 U.S.C. § 5596

and 28 U.S.C. § 2501. Venue is proper pursuant to 28 U.S.C. § 1402.

## PARTIES

3.      Plaintiff Julio Cruz is a resident of El Paso, Texas, and is currently employed by defendant United States pursuant to Title 5 of the U.S. Code. Plaintiff Cruz is currently employed as a Senior Officer Specialist, GS-8, Step 10 (paid under the "General Schedule"), at FCI La Tuna. At various times within the last six years, and specifically, since in or around February 2020, plaintiff Cruz has been required to perform duties involving unusual physical hardship and hazards within the meaning of 5 U.S.C. §5545(d), and therefore, as detailed below, plaintiff Cruz is entitled to "hazardous duty pay" for each such day.

4.      Plaintiff Anivar Chacon is a resident of Las Cruces, New Mexico, and is currently employed by defendant United States pursuant to Title 5 of the U.S. Code. Plaintiff Chacon is currently employed as a HVAC Forman, WS-9 Step 5 (paid under the "Federal Wage System" at FCI La Tuna. At various times within the last six years, and specifically, since in or around February 2020, plaintiff Chacon has been required to perform duties involving unusual physical hardship and hazards within the meaning of 5 U.S.C. §5545(d), and therefore, as detailed below, plaintiff Chacon is entitled to "hazardous duty pay" for each such day.

5.      The additional persons who are plaintiffs in this action are or were employees of the defendant at FCI La Tuna within the relevant timeframe. Each of the additional plaintiffs has been required to perform duties involving unusual physical hardship and hazards within the meaning of 5 U.S.C. §5545(d) and/or has been required to perform duties involving unusually severe working conditions or unusually severe hazards within the meaning of 5 U.S.C. § 5343(c)(4), and therefore, as detailed below, is entitled to "hazardous duty pay" and/or "environmental differential pay" for each such day.

7

6.    Each plaintiff in this action is, or has been, an "employee" within the meaning of Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 2105, 5102, and 5342, and within the meaning of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 203(e)(1).

7.    Each plaintiff is a current or former correctional worker employed by the U.S. Department of Justice, Bureau of Prisons, at FCI La Tuna in Anthony, Texas. They have given their written consent to be party plaintiffs in this action pursuant to 29 U.S.C. § 216(b), and their consent to sue forms are attached as Exhibit A. These written consent forms set forth each plaintiff's name and home address.

8.    The defendant, United States, is and at all material times has been, an employer under Title 5 of the U.S. Code, specifically 5 U.S.C. §§ 5102 and 5541. In addition, defendant United States is, and at all material times has been, a "public agency" and "employer" within the meaning of the FLSA, 29 U.S.C. § 203(x) and § 203(d).  Defendant employs, or has employed, plaintiffs and other employees in similar activities and has its principal place of business in Washington, D.C.

## **FACTS**

9.    At all times material herein, plaintiffs have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

10.    At all times material herein, plaintiffs have been suffered or permitted to work, and have in fact worked, in excess of the hourly levels specified in the FLSA, 29 U.S.C. § 207.  As a result, at all times material herein, plaintiffs have been entitled to overtime compensation at a rate of not less than one and one-half times their regular rates of pay for the hours of overtime they have been scheduled to and did work.

11.     FCI La Tuna is a low security correctional facility consisting of (1) FCI La Tuna, a low-security correctional facility; (2) FSL La Tuna, a low-security satellite prison; and (3) the Camp, a minimum-security camp. In total, FCI La Tuna houses more than 800 criminals convicted of federal crimes, including violent offenders, drug dealers, rapists, murderers, and gang members.

12.     Section 5545(d) of Title 5 of the U.S. Code provides that the United States Office of Personnel Management ("OPM") shall establish a schedule of pay differentials for duty involving unusual physical hardship or hazard. Pursuant to 5 U.S.C. § 5545(d), OPM has issued regulations at 5 C.F.R. §§ 550.901-550.907, which establish a schedule of hazardous duty pay differentials and provide that an employee who qualifies for hazardous duty pay shall be paid the hazardous duty pay differential for each day that the employee is exposed to hazardous duty.

13.     The schedule of hazardous duty pay differentials set forth in Appendix A to Subpart I of Part 550 of Title 5, Code of Federal Regulations, provides that agencies shall pay a twenty five percent (25%) hazard pay differential when employees perform work with or in close proximity to "virulent biologicals," which are defined as "materials of micro-organic nature which when introduced into the body are likely to cause serious disease or fatality and for which protective devices do not afford complete protection." 5 C.F.R. Pt. 550, Subpt. I, App. A.

14.     OPM has also issued regulations for prevailing rate employees pursuant to 5 U.S.C. § 5343(c)(4), which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

15.     The schedule of environmental pay differentials set forth in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations, provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial,

or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserums and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" and a four percent (4%) environmental pay differential when employees perform work with or in close proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury" and 5 C.F.R. Pt. 532, Subpt. E, App. A.

16.     Beginning in or around February 2020, and continuing and ongoing, plaintiffs have performed work with or in close proximity to COVID-19, the virulent biological, including, without limitation, work with or in close proximity to facilities, rooms, offices, workspaces, equipment, objects, surfaces, and/or individuals infected with the novel coronavirus that causes COVID-19.

17.     COVID-19 is a virus[1] that, when introduced into the body, is likely to cause serious disease or fatality. The Centers for Disease Control and Prevention ("CDC") has determined that COVID-19 meets the definition for "severe acute respiratory syndromes" as set forth in Executive Order 13295, as amended by Executive Orders 13375 and 13674, and, therefore, is a "quarantinable communicable disease." *See* Office of Pers. Mgmt., CPM 2020-05, *Coronavirus Disease 2019 (COVID-19): Additional Guidance* (March 7, 2020), *available at* https://www.chcoc.gov/content/coronavirus-disease-2019-covid-19-additional-guidance        (last

---

[1] Although COVID-19 is technically the disease caused by the novel coronavirus, plaintiffs will hereafter refer to the virus and the disease it causes simply as "COVID-19."

visited December 2, 2022). COVID-19 can cause symptoms ranging from mild illness to severe illness and death. *See Coronavirus Disease 2019 (COVID-19), Symptoms of Coronavirus*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html    (last    visited December 2, 2022).

18.    More than 6,612,970 people worldwide, including more than 1,075,779 in the United States, have died from COVID-19. *See Coronavirus disease (COVID-19) pandemic*, World Health Org., https://www.who.int/emergencies/diseases/novel-coronavirus-2019 (last visited December 2, 2022); *Coronavirus Disease 2019 (COVID-19), Cases in the U.S.*, CDC, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited December 2, 2022).

19.    COVID-19 spreads very easily from person to person and has been characterized as a pandemic by the World Health Organization ("WHO"). *Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html (last visited December 2, 2022).

20.    COVID-19 can be spread by touching infected objects or surfaces and by breathing in areas where an infected person has coughed or exhaled. As the WHO explains, "The virus can spread from an infected person's mouth or nose in small liquid particles when they cough, sneeze, speak, sing, or breathe. . ..  People may also become infected by touching surfaces that have been contaminated by the virus when touching their eyes, nose, or mouth without cleaning their hands." *Coronavirus disease (COVID-19): How is it transmitted?* (updated December 23, 2021), https://www.who.int/news-room/q-a-detail/coronavirus-disease-covid-19-how-is-it-transmitted (open "How does COVID-19 spread between people?") (last visited December 2, 2022).

21.    According to researchers at the National Institutes of Health, COVID-19 can persist on surfaces for up to three days. *Study suggests new coronavirus may remain on surfaces for days*,

https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days (March 24, 2020) (last visited December 2, 2022). Accordingly, contact with an infected object or surface may present a risk of transmission for days from the time the object or surface becomes infected.

22.    A person who is infected with COVID-19 may not present symptoms immediately. Rather, there is an "incubation period" in which a person is infected but has not begun to present symptoms. According to the WHO, "[t]he time from exposure to COVID-19 to the moment when symptoms begin is, on average, 5-6 days and can range from 1–14 days." *Q&A on coronaviruses (COVID-19)*, WHO, (updated May 13, 2021), https://www.who.int/news-room/q-a-detail/q-a-coronaviruses (open "How long does it take to develop symptoms?") (last visited December 2, 2022).

23.    An infected individual may spread COVID-19 before he or she begins to present significant symptoms. As the WHO explains, "[w]hether or not they have symptoms, infected people can be contagious and the virus can spread from them to other people. Laboratory data suggests that infected people appear to be most infectious just before they develop symptoms (namely 2 days before they develop symptoms) and early in their illness." *Coronavirus disease (COVID-19): How is it transmitted?* (updated December 23, 2021), https://www.who.int/news-room/q-a-detail/coronavirus-disease-covid-19-how-is-it-transmitted (open "When do infected people transmit the virus") (last visited December 2, 2022).

24.    Correctional facilities present an especially hazardous environment for the spread of virulent biologicals, such as COVID-19. As United States Department of Justice, Office of the Inspector General has explained, and according to the CDC, "the confined nature of correctional facilities, combined with their congregant environments, heighten[s] the potential for COVID-19

to spread once introduced into a facility." *Pandemic Response Report 21-012, Remote Inspection of Federal Medical Center Fort Worth*, OIG (Dec. 15, 2020), https://oig.justice.gov/sites/default/files/reports/21-012.pdf (last visited December 2, 2022); *accord Pandemic Response Report 21-032, Remote Inspection of Federal Correctional Institution Milan* (Jan. 28, 2021), https://oig.justice.gov/sites/default/files/reports/21-032.pdf (last visited December 2, 2022).

25.    Indeed, while worldwide about 2 in 100 people are known to have had the coronavirus, inside U.S. prisons, including federal prisons, that number is 34 in 100. *See* Eddie Burkhalter, et al., *Incarcerated and Infected: How the Virus Tore Through the U.S. Prison System,* N.Y. TIMES (Apr. 10, 2021), https://www.nytimes.com/interactive/2021/04/10/us/covid-prison-outbreak.html (last visited December 2, 2022).

26.    FCI La Tuna experienced an outbreak of COVID-19 among its inmate population and correctional workers. FCI La Tuna identified its first COVID-19 positive case at least as early as approximately March 2020. As of December 2, 2022, the cumulative cases at FCI La Tuna have increased to more than 519 confirmed inmate infections, and more than 136 confirmed staff cases, with at least 6 active cases.

27.    Since at least February 2020, through the present and continuing and ongoing, plaintiffs and others similarly situated have performed work with or in close proximity to objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices.

28.    Unlike many Government employees, plaintiffs cannot work remotely, even during a pandemic. This is because FCI La Tuna must be physically staffed 24 hours per day, 365 days per year with correctional workers, including plaintiffs.

29.     Housing units within the facilities at FCI La Tuna have been used as isolation and/or quarantine units for inmates with positive COVID-19 cases for quarantine and isolation, particularly where numerous inmates on a single housing unit test positive for COVID-19. Housing Unit 2 and 5 were designated for inmate quarantine and isolation, as well as a Housing Unit at the Camp. The upper level of the Special Housing Unit was also designated for quarantine and isolation for all inmates. In that circumstance, the healthy inmates have been moved to another housing unit while that housing unit is temporarily turned into a quarantine unit. Further, at the height of the Institution's COVID-19 outbreak, the Institution also utilized parts of the facility typically no longer used for inmate housing, including but not limited to C-Block and D-Block which were the primary location for quarantine and isolation for inmates designated as treaty transfers, either arriving or departing from the country.

30.     Plaintiffs are charged with the principal activity and primary job duty of maintaining the safety and security of the Institution at all times, in significant part by coming into close physical proximity with inmates and other correctional workers.

31.     Both before and during the documented outbreak of COVID-19 among the inmates and correctional workers at the Institution, plaintiffs have been assigned to individual posts and/or positions within the Institution for each shift. Defendant maintains a record of each plaintiff's employment and daily assignments, going back to the plaintiff's first assignment within the Institution. Accordingly, defendant knows the posts and/or positions to which each plaintiff has been assigned on a daily basis going back to the beginning of the pandemic and before.

32.     The posts and/or positions to which plaintiffs have been assigned within the Institution involve prolonged, close-quarters exposure to coworkers and/or inmates, often in indoor or enclosed settings.

33.     Plaintiffs regularly interact with inmates and come into close proximity or direct physical contact with members of the inmate population on a daily basis. For example, whether at an assigned post or otherwise traveling within the Institution, plaintiffs are responsible for performing inmate "pat downs" requiring close proximity and direct physical contact with inmates. Plaintiffs must also participate in other searches (e.g., of inmate living quarters) which put them in close proximity and physical contact with inmates and their personal effects.

34.     Plaintiffs also come into close physical proximity with coworkers and inmates when performing daily job duties around the Institution, such as closely supervising inmates assigned to daytime activities ("work detail"), correcting inmate behavior, distributing equipment for use by inmates, escorting inmates throughout the Institution, and/or waiting in small, enclosed "sallyports" with coworkers or inmates.

35.     In addition, plaintiffs come into close physical proximity and direct contact with coworkers when they engage in a required information and equipment exchange during the shift exchange process. During this exchange, the outgoing correctional worker provides a critical verbal briefing to the oncoming officer or other correctional worker regarding security incidents and inmate information obtained during the prior shift. The outgoing correctional worker also hands off a set of shared but required security equipment—including radios, keys, and OC spray— to the oncoming correctional worker.

36.     Regardless of post or assignment, plaintiffs must enter into the Institution for each shift, coming into close personal contact with coworkers and/or inmates, and physically touch equipment that is regularly handled by coworkers, including but not limited to metal chains, metal accountability chits, keys, handcuffs, radios, radio batteries, and cutdown tools.

37. Regardless of post or assignment, plaintiffs must also physically touch objects and surfaces throughout the Institution that are regularly handled by coworkers and inmates, including but not limited to keys, door handles, security gates, cell doors, work stations/computers, logbooks, trash and trash receptacles, inmate effects and possessions, work tools, restroom surfaces, sinks and toilets, and other communal objects.

38. Plaintiffs also work in close proximity to inmates and other coworkers potentially infected with COVID-19 when transporting prisoners by bus in between institutions, when processing new arrivals and their personal effects, and when escorting new arrivals to points within FCI La Tuna. As the OIG has admitted, "[a]ny time prisoners are moved, there is an inherent risk that the prisoner could transmit COVID-19 to other parties including the transporting officials, other prisoners, and staff or inmates of the destination facility. This is because of the necessary interactions between prisoners and staff that take place during transportation operations as well as the confined spaces of buses and aircraft, even when social distancing is encouraged." *Review of the United States Marshals Service's Response to the COVID-19 Pandemic*, *Audit Division 21-034*, OIG (Feb. 3, 2021), https://oig.justice.gov/sites/default/files/reports/21-034.pdf (last visited December 2, 2022). At FCI La Tuna, correctional workers were told to assume that all inmates being transferred into the Institution are positive for COVID-19. Correctional workers were not informed of the COVID-19 status of all transported inmates, even when that status is known by the Agency. Plaintiffs, as well as the Institution as a whole, are at substantial risk of COVID-19 exposure with every interaction with transported prisoners, every prisoner escorted, and every new arrival processed.

39. The foregoing exposure to areas, objects, surfaces, and/or individuals infected with COVID-19 was not taken into account in the classification of plaintiffs' positions.

40.     Defendant has not provided sufficient protective equipment nor measures to practically eliminate the hazard of exposure to COVID-19 at FCI La Tuna.

41.     Plaintiffs work in close proximity to COVID-19 at the Institution, and they have performed work that involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease within the meaning of subpart E of Part 532 of Title 5, Code of Federal Regulations.

42.     As a result of plaintiffs' performance of their official duties in close proximity to COVID-19 on objects, surfaces, and/or individuals infected with COVID-19, as alleged herein, plaintiffs have been exposed to "virulent biologicals" within the meaning of Subpart I of Part 550 of Title 5, Code of Federal Regulations, and hazardous micro-organisms within the meaning of Subpart E of Part 532 of Title 5, Code of Federal Regulations.

43.     Defendant has not compensated plaintiffs with the hazardous duty pay differential for exposure to virulent biologicals as set forth in Appendix A to Subpart I of Part 550 of Title 5, Code of Federal Regulations, or the environmental differential for exposure to hazardous microorganisms set forth in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations. Accordingly, defendant has failed to provide hazardous duty and environmental differential pay to plaintiffs when they work with or in close proximity to COVID-19 on objects, surfaces, and/or individuals infected with COVID-19 as required by 5 U.S.C. § 5545(d) and 5 U.S.C. § 5343(c)(4).

44.     Because defendant has failed to pay plaintiffs hazardous duty pay and/or environmental pay differentials, defendant has not included such pay when calculating plaintiffs' regular rates of pay for purposes of calculating and paying overtime compensation under the FLSA.

## CLAIMS

### COUNT ONE – Hazardous Duty Pay

45.     Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through and including paragraph 44 of this Complaint.

46.     Section 5545(d) of Title 5 of the U.S. Code provides that the United States Office of Personnel Management (OPM) shall establish a schedule of pay differentials for duty by federal employees involving unusual physical hardship or hazard. Section 5545(d) further provides that OPM prescribe "such minimum periods as it determines appropriate" during which an employee who performs duty involving physical hardship or hazard is entitled to hazardous duty pay.

47.     Pursuant to Section 5545(d) of Title 5, OPM has issued regulations at 5 C.F.R. §§ 550.901-550.907 pertaining to hazardous duty pay. These regulations establish a schedule of hazardous pay differentials and provide, *inter alia*, that an employee who qualifies for hazardous duty pay shall be paid hazardous duty pay for each day that the employee is exposed to hazardous duty or physical hardship.

48.     The schedule of hazardous duty pay differentials that OPM has established in regulations 5 C.F.R. §§ 550.901-550.907 provides that agencies shall pay hazardous duty pay to employees who are exposed to virulent biologicals, such as COVID-19, to which plaintiffs have been exposed. They further provide that the hazardous duty pay differential which the agency shall pay the employees equals twenty five percent (25%).

49.     Since at least February 2020, through the present and continuing and ongoing, plaintiffs and others similarly situated have performed work with or in close proximity to COVID-19, including, without limitation, work performed with or in close proximity to facilities, rooms, offices, workspaces, equipment, objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices. The defendant is in exclusive possession of relevant

18

personnel files, records, and information, including, but not limited to, plaintiffs' dates of hire/separation, job descriptions, and work assignments. Defendant also retains records reflecting the names of employees and inmates who have had COVID-19, when they had COVID-19, and their locations in the Institution during that time of infection and potential infection. Each BOP facility has a daily roster of assignments for correctional workers—from which their location and movements throughout the day can be shown—as well as records reflecting the location and COVID-19 status of inmates at the Institution. These records, as well as other evidence in the defendant's exclusive custody and control, will readily demonstrate plaintiffs' close proximity to the virulent biological COVID-19.

50.    Although plaintiffs have been exposed to virulent biologicals, defendant has failed and refused, and continues to fail and refuse, to pay plaintiffs the twenty five percent (25%) pay differential for each day that plaintiffs have been required to work in close proximity to COVID-19. By failing and refusing to pay plaintiffs a twenty five percent (25%) pay differential on these occasions, and continuing to fail and refuse to pay plaintiffs for this hazardous duty, the defendant has violated, and is continuing to violate, the provisions of Title 5 relating to hazardous duty pay at 5 U.S.C. § 5545(d).

51.    As a consequence of defendant's failure and refusal to pay plaintiffs hazardous duty pay at all times material herein, plaintiffs have been unlawfully deprived of hazardous duty pay and other relief for the maximum statutory period allowed under federal law.

52.    As a result of the defendant's willful and purposeful violations of Title 5, there has become due and owing to each plaintiff various amounts which have not yet been precisely determined. The employment and work records, including each plaintiff's daily assignments within the Institution, are in the exclusive possession, custody and control of defendant and its

public agencies and plaintiffs are unable to state at this time the exact amounts owing to each of them. For example, the defendant is in exclusive possession of relevant personnel files and records reflecting plaintiffs' dates of hire/separation, job descriptions, and work assignments, as well as records reflecting the names of employees and inmates who have had COVID-19, when they had COVID-19, and their locations in the Institution during that time of infection and potential infection. Each BOP facility has a daily roster of assignments for correctional workers—from which their location and movements throughout the day can be shown—as well as records reflecting the location and COVID-19 status of inmates at the Institution. Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, the FLSA, 29 U.S.C. § 211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

53.    Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for the defendant's failure to pay them hazardous duty pay.

54.    Plaintiffs are entitled to recover attorneys' fees and costs under the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

**COUNT TWO – Environmental Differential Pay**

55.    Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through and including paragraph 54 of this Complaint.

56.    Pursuant to 5 U.S.C. § 5343(c)(4), OPM has issued regulations regarding wage schedules and rates for prevailing rate employees which provide for environmental pay differentials for duty involving unusually severe working conditions or unusually severe hazards. *See* 5 C.F.R. § 532.511.

20

57.    The schedule of environmental differentials is contained in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations. *See* 5 C.F.R. § 532.511(d).

58.    The schedule of environmental differentials provides that agencies shall pay an eight percent (8%) environmental differential when employees perform work with or in close proximity to "micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease" in situations where "the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserums and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury" or a four percent (4%) environmental differential when employees perform work with or in close proximity to "micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man" where "the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury." 5 C.F.R. Pt. 532, Subpt. E, App. A.

59.    The regulations provide that "[a]n employee entitled to an environmental differential shall be paid an amount equal to the percentage rate authorized by the Office of Personnel Management for the category in which the working condition or hazard falls, multiplied by the rate for the second step of WG–10 for the appropriated fund employees and NA–10 for the nonappropriated fund employees on the current regular non-supervisory wage schedule for the wage area for which the differential is payable, counting one-half cent and over as a whole cent." 5 C.F.R. § 532.511(b)(1).

60.    An employee entitled to an environmental differential on the basis of hours in a pay status "shall be paid for all hours in a pay status on the day on which he/she is exposed to the

situation." 5 C.F.R. § 532.511(b)(3).

61.     Since at least February 2020, through the present and continuing and ongoing, plaintiffs paid pursuant to the prevailing rate pay system and other similarly situated prevailing rate employees have performed work with or in close proximity to COVID-19, including, without limitation, work performed with or in close proximity to facilities, rooms, offices, workspaces, equipment, objects, surfaces, and/or individuals infected with COVID-19 without sufficient protective devices. The defendant is in exclusive possession of relevant personnel files, records, and information, including but not limited to plaintiffs' dates of hire/separation, job descriptions, and work assignments. Defendant also retains records reflecting the names of employees and inmates who have had COVID-19, when they had COVID-19 or potential/likely Covid-19 infection, and their locations in the Institution during that time. Each Bureau of Prisons facility has a daily roster of assignments for correctional workers—from which their location and movements throughout the day can be shown—as well as records reflecting the location and COVID-19 status of inmates at the Institution. These records, as well as other evidence in the defendant's exclusive custody and control, will readily demonstrate plaintiffs' close proximity to the virulent biological COVID-19.

62.     Defendant has failed, and continues to fail to pay plaintiffs the eight or four percent environmental differential listed in Appendix A to Subpart E of Part 532 of Title 5, Code of Federal Regulations for each period when they have been exposed to COVID-19 through the performance of their official duties.

63.     By failing to pay plaintiffs the eight or four percent environmental differential on these occasions, and continuing to fail and refuse to pay plaintiffs for this hazardous duty, the defendant has violated, and is continuing to violate, the provisions of 5 U.S.C. § 5343(c)(4).

64.     As a consequence of defendant's failure to pay plaintiffs environmental differential pay, plaintiffs have been unlawfully deprived of environmental differential pay and other relief.

65.     As a result of the defendant's willful and purposeful violations of Title 5, there has become due and owing to each plaintiff various amounts which have not yet been precisely determined. The employment and work records, including each plaintiff's daily assignment within the Institution, are in the possession, custody and control of the defendant and plaintiffs are unable to state at this time the exact amounts owing to each of them. For example, the defendant is in exclusive possession of relevant personnel files and records reflecting plaintiffs' dates of hire/separation, job descriptions, and work assignments, as well as records reflecting the names of employees and inmates who have had COVID-19, when they had COVID-19 infection or potential/likely COVID-19 infection, and their locations in the Institution during that time. Each BOP facility has a daily roster of assignments for correctional workers—from which their location and movements throughout the day can be shown—as well as records reflecting the location and COVID-19 status of inmates at the Institution. Defendant is under a duty imposed by the Government Accounting Office retention schedule, the FLSA, 29 U.S.C. § 211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs and other employees similarly situated from which the amounts of defendant's liability can be ascertained.

66.     Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for the defendant's failure to pay them environmental pay differential.

67.     Plaintiffs are entitled to recover attorneys' fees and costs under the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

**COUNT 3 – FLSA Regular Rate**

68.     Plaintiffs re-allege and incorporate by reference herein paragraphs 1 through and including paragraph 67 of this Complaint.

69.     Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides that overtime shall be paid to employees for work hours in excess of 40 hours in a week at the rate of one and one-half times an employee's "regular rate of pay." In addition, Section 551.501 of Part 5 of the Code of Federal Regulations, 5 CFR § 551.501, provides that federal agency employers, such as the Bureau of Prisons, shall compensate their employees at a rate of not less than one and one-half times the employees' regular rate of pay for all hours of work in excess of 8 in a day and/or 40 in a workweek.

70.     At all times material herein, during the work weeks in which plaintiffs have been scheduled to and have worked in excess of 40 hours in a week and/or 8 hours in a day and have been paid overtime pay for such work, defendant has failed to properly calculate the "regular rate of pay" used to calculate FLSA overtime pay. Defendant has violated the FLSA by failing to include hazardous duty pay and environmental pay differential payments, owed to plaintiffs as set forth in Counts 1 and 2 above, in the regular rate of pay at which FLSA overtime is paid. The FLSA claim in this case is limited exclusively to the improper calculation of the regular rate of pay used by the Defendant when it paid FLSA overtime pay to plaintiffs caused by the failure of the defendant to include hazardous duty and/or environmental pay differential payments, to which plaintiffs have been and continue to be entitled as explained in paragraphs 1-67 herein.

71.     By failing to properly calculate the regular rate of pay for plaintiffs and other employees similarly situated as required under law, defendant has violated, and is continuing to violate in a willful and intentional manner, the provisions of the FLSA. Therefore, at all times

material herein, plaintiffs have been unlawfully deprived of overtime compensation and other relief for the maximum statutory period allowed under federal law.

72.     As a result of defendant's willful and purposeful violations of the FLSA, there have become due and owing to plaintiffs an amount that has not yet been precisely determined.  The employment and work records for plaintiffs are in the exclusive possession, custody and control of defendant and its public agencies and plaintiffs are unable to state at this time the exact amount owing to them.  Defendant and its public agencies are under a duty imposed by the Government Accounting Office retention schedule, the FLSA, 29 U.S.C. § 211(c), and various statutory and regulatory provisions to maintain and preserve payroll and other employment records with respect to plaintiffs from which the amount of defendant's liability can be ascertained.

73.     Pursuant to 29 U.S.C. § 216(b), plaintiffs are entitled to recover liquidated damages in an amount equal to their back pay damages for Defendant's failure to pay overtime compensation at the correct rate on occasions when Defendant paid plaintiffs for overtime work.

74.     Pursuant to the Back Pay Act, 5 U.S.C. § 5596, plaintiffs are entitled to recover interest on their back pay damages for defendant's failure to pay them overtime compensation at the correct rate on occasions when Defendant paid plaintiffs for overtime work.

75.     Plaintiffs are entitled to recover attorneys' fees and costs under 29 U.S.C. § 216(b), and the Back Pay Act, 5 U.S.C. § 5596, as well as other applicable laws and regulations.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on their own behalf and on behalf of others similarly situated who opt into this lawsuit, pray that this Court:

(a) Enter judgment declaring that defendant has willfully and wrongfully violated its statutory obligations, and deprived each of the plaintiffs of their rights;

(b) Order a complete and accurate accounting of all the compensation to which plaintiffs are entitled;

(c) Award each plaintiff monetary damages, plus interest;

(d) Award each Plaintiff liquidated damages equal to the backpay awarded on their FLSA regular rate violation claims;

(e) Award plaintiffs their reasonable attorneys' fees to be paid by the defendant, and the costs and disbursements of this action; and

(f) Grant such other relief as may be just and proper.


Dated: December 2, 2022                    Respectfully submitted,

                                           */s/ T. Reid Coploff*
                                           T. Reid Coploff
                                           McGILLIVARY STEELE ELKIN LLP
                                           1101 Vermont Avenue, N.W.
                                           Suite 1000
                                           Washington, D.C.  20005
                                           (202) 833-8855
                                           trc@mselaborlaw.com

                                           *Attorney of Record for Plaintiffs*


                                           Sophia Serrao
                                           McGILLIVARY STEELE ELKIN LLP
                                           1101 Vermont Avenue, N.W.
                                           Suite 1000
                                           Washington, D.C.  20005
                                           (202) 833-8855
                                           ss@mselaborlaw.com

                                           *Of Counsel for Plaintiffs*